IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 24, 2004 Session

## TERRI MITCHELL v. SARATOGA INVESTMENT COMPANY and WILLIAM LEIGHTON REED

**An Appeal from the Chancery Court for Shelby County**
**No. 107896-2     Walter L. Evans, Judge**

---

**No. W2004-00587-COA-R3-CV - Filed December 30, 2004**

---

This case is about enforcement of a settlement agreement. In 1994, the parties entered into a joint agreement for the development of residential property. In 1996, the plaintiff filed a lawsuit against the defendants, alleging breach of contract. The parties attempted to reach a settlement agreement to resolve the dispute. This resulted in a written agreement signed only by the defendant. The defendant made some payments pursuant to the written agreement, but further disputes arose. The defendant moved to enforce the settlement agreement. The plaintiff alleged that she never agreed to the final settlement agreement. The trial court held that the written settlement agreement was binding on the parties. The plaintiff then appealed this ruling, again alleging that no settlement agreement ever existed, and, in the alternative, that the defendant breached the settlement agreement by not tendering the required payments. We vacate the order of the trial court, finding that even if a valid settlement agreement existed, the defendant breached the agreement by failing to tender the required payments.

**Rule 3 Appeal; Judgment of the Chancery Court is Vacated and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

John S. Colley, III, Columbia, for the plaintiff/appellant Terri Mitchell

G. Coble Caperton, Memphis, for the defendant/appellee William Leighton Reed

John McQuiston, II, Memphis, for defendant/appellee Saratoga Investment Company

# MEMORANDUM OPINION[1]

In March 1994, Plaintiff/Appellant Terri Mitchell ("Mitchell") and Defendant/Appellee Saratoga Investment Company ("Saratoga") and Defendant/Appellee William L. Reed ("Reed") entered into a joint venture agreement for the development of residential property. As part of the joint venture, Saratoga and Reed executed a promissory note for $35,000 to a third party, which was later assigned to Mitchell.

In July 1996, Mitchell filed a lawsuit against Saratoga and Reed, alleging breach of contract and misrepresentation. Over the next three years, the parties attempted to settle the lawsuit. Finally, on November 2, 1999, Reed sent Mitchell a written settlement agreement, signed by Reed. The relevant terms of the settlement agreement were that (1) all damages related to the original promissory note totaled $55,000; (2) Reed would pay Mitchell $10,000 upon Mitchell's execution of the settlement agreement; (3) Reed would pay Mitchell $5,000 on or before November 12, 1999; (4) Reed would pay Mitchell $5,000 on or before December 10, 1999; (5) Reed would pay Mitchell $5,000 on or before January 7, 2000; and (6) the remaining balance of $30,000 would either be paid or the parties would negotiate a payment plan.

As set forth in the written settlement agreement, Reed sent a $10,000 payment to Mitchell along with the written agreement. Despite this, Mitchell did not execute the written settlement agreement. On November 2, 1999, Reed paid an additional $5,000 to Mitchell. With this additional payment, Reed's attorney enclosed a letter to Mitchell's attorney, noting that Mitchell still had not returned a signed copy of the settlement agreement. Despite Reed's concern about not receiving a signed copy of the settlement agreement, he continued to attempt to make payments.

In a letter dated February 28, 2001, Mitchell's attorney returned the $5,000 payment to Reed's attorney, advising Reed that Mitchell did not accept the settlement agreement and that if Reed did not immediately pay the full amount owed, Mitchell would proceed to trial. In response, on November 2, 2001, Reed filed a Motion to Enforce Settlement Agreement. Mitchell filed an objection to Reed's motion. In support, Mitchell filed her own affidavit stating that, although she had agreed to the terms of the settlement agreement, her agreement was contingent on Reed making several "good faith" payments. Since Reed had made only two payments, Mitchell refused to accept the settlement agreement.

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides as follows:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

In January 2002, the trial court apparently granted Reed's motion to enforce the settlement agreement.[2] Mitchell immediately filed a Motion to Reconsider, Clarify and/or Confirm the Court's Ruling of January 7, 2002 ("Motion to Reconsider"), asserting again that no settlement agreement existed, that the settlement agreement was too vague to be enforced, that the agreement did not state when payments were to be made, and that it did not resolve the pending litigation between the parties. In addition, in the event that the trial court declined to change its prior ruling, Mitchell's motion to reconsider asked for clarification of the alleged settlement agreement.

In an order dated February 8, 2002, the trial court reaffirmed its prior order and clarified the terms of the settlement agreement to be enforced: (1) Reed owed Mitchell $40,000 (the original $55,000 less the $15,000 already paid); (2) $5,000 would be paid on March 1 and April 1 of 2002 with the $30,000 balance paid by May 1, 2002; (3) Mitchell was not entitled to any additional interest, attorney's fees or other unpaid charges; and (4) that if the payments were not made according to this order, Mitchell could bring the matter back to the trial court for further proceedings. On March 5, 2002, Mitchell appealed this ruling to the Court of Appeals. On the same day, Mitchell's attorney notified Reed's attorney by letter that the issue was on appeal. With this letter, Mitchell returned Reed's $5,000 check and advised Reed to make further payments to the trial court clerk.

While Mitchell's appeal was pending in this Court, Mitchell filed a motion with the trial court for relief under Rule 60 of the Tennessee Rules of Civil Procedure, as well as a motion with this Court to remand for the trial court to consider the Rule 60 motion. This Court granted Mitchell's motion to remand. The trial court considered Mitchell's Rule 60 motion but declined to change its prior decision. Consequently, Mitchell continued the appeal in this Court.[3]

On appeal, Mitchell asserts that the evidence preponderates against the trial court's finding that a settlement agreement existed. Mitchell further asserts that, even if a settlement agreement did exist, Reed breached the agreement by failing to make the payments as ordered.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. ***See*** Tenn. R. App. P. 13(d). Questions of law are reviewed *de novo*, with no presumption of correctness. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

Mitchell first asserts that the evidence before the trial court was insufficient to find that a settlement agreement existed. Mitchell argues that the only evidence before the trial court was the unsigned, written agreement and the affidavits of Mitchell and her attorney, both indicating that the

---

[2]The appellee record does not include this order, only a letter from the trial judge's clerk informing the parties' counsel of the trial court's decision. However, the existence of the order appears undisputed by the parties.

[3] At this juncture, the appeal was dismissed because there was no final order regarding Saratoga. Mitchell then filed a nonsuit against Saratoga. Although not completely clear, it appears from the record that Saratoga became insolvent. After the nonsuit against Saratoga was entered, the record from the first appeal was consolidated into this appeal by an order dated April 29, 2004.

settlement agreement was never finalized. Mitchell further asserts that, in the alternative, if the settlement agreement did exist, then Reed breached the agreement by failing to tender payments to the court clerk as advised by Mitchell's counsel.

It is undisputed from the record that Reed did not tender the payments in accordance with the schedule set forth in the February 8, 2002 order of the trial court. The first $5,000 payment, due on March 1, 2002, was returned to Reed with the letter advising Reed to tender the payments to the trial court clerk. Reed did not do so and made no attempt to tender any of the other payments. Reed argues that he was excused from making the payments because Mitchell refused to accept the first payment, and this made Reed's performance impossible. Reed further argues that, because Mitchell has consistently maintained that no settlement agreement existed, she is judicially estopped from arguing that Reed breached the settlement agreement.

As a threshold issue, we address the issue of judicial estoppel. The doctrine of judicial estoppel prevents a litigant from taking contrary positions in judicial proceedings. "Where one states under oath in former litigation, either in a pleading, a deposition or on oral testimony, a given fact as true, one will not be permitted to deny that fact in subsequent litigation." *Sibley v. McCord*, 2004 WL 2168392 at *2 (Tenn. Ct. App. Sept. 28, 2004).

The doctrine of judicial estoppel is simply not applicable in this case. Mitchell is not asserting inconsistent facts, she is making classic alternative arguments, clearly permitted under the applicable rules. *See* Rule 8.01 of the Tennessee Rules of Civil Procedure.[4] Mitchell is permitted to argue that no settlement agreement existed *or,* even if a settlement agreement existed, Reed breached it. Reed's argument on this issue is without merit.

Reed also asserts that Mitchell's refusal to accept payment rendered his performance impossible and thus excused his performance. However, Mitchell's counsel specifically advised Reed to tender the payments to the trial court clerk since the trial court's decision was on appeal. At no point did Mitchell indicate that Reed was excused from tendering payment; quite the opposite. Moreover, Mitchell's action did not make it impossible for Reed to tender payment; the payments were merely directed to the trial court clerk. Clearly, Reed was still responsible for tendering[5] the payments as ordered by the trial court. Reed's failure to do so was a breach of the settlement agreement. *See General Const. Contractors Ass'n, Inc. v. Greater St. Thomas Baptist Church,*107 S.W.3d 513, 519 (Tenn. Ct. App. 2002). Because Reed clearly breached the settlement agreement, it is not necessary for us to determine whether a settlement agreement actually existed. Pursuant to the trial court's February 8, 2002 order, Mitchell may proceed to enforce her claim against Reed.

Accordingly, we vacate the order of the trial court finding that a settlement agreement existed between the parties and remand for further proceedings not inconsistent with this opinion. Costs of

---

[4] The relevant portion of Rule 8.01 states that "[r]elief in the alternative or of several different types may be demanded." Tenn. R. Civ. P. 8.01

[5] Tender is defined as "an unconditional offer of payment consisting in the actual production. . . of a sum not less than the amount due on a specific debt or obligation." 74 Am. Jur. 2d *Tender* § 1 (2004).

this appeal are charged to the appellee, William Leighton Reed, for which execution may issue, if necessary.

        _____

        HOLLY M. KIRBY, JUDGE